## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Ryan Welfare**,

    *Plaintiff*,

v.

**United Tranzactions, LLC,**
**Martin Halpern,**
**Adam J. Katz, P.A.,** *and*
**Experian Information Solutions, Inc.,**

    *Defendants.*

Case No.:  8:21-cv-1122

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Ryan Welfare** ("**Mr. Welfare**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **United Tranzactions, LLC ("United Tranzactions"), Martin Halpern ("Halpern"), Adam J. Katz, PA ("Katz")** and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, "**the Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.  This is an action brought by Mr. Welfare against Experian and Katz for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**") and against United Tranzactions, Katz, and Halpern for violations of the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et. seq.*

("**FCCPA**") and the *Civil Remedies for Criminal Practices Act* ("**CRCPA**"), Section 772.101, Florida Statutes, *et seq.*

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FCRA claims arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C § 1331.

3.      This Court has supplemental jurisdiction for Mr. Welfare's state law claims pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants therein.

## PARTIES

### Mr. Welfare

6.      **Mr. Welfare** is a natural person residing in the City of Lakeland, Polk County, Florida, and a *Consumer* as defined by 15 U.S.C. § 1681a(c) and Section 559.55(8), Florida Statutes.

### United Tranzactions

7.      **United Tranzactions** is a Florida limited liability company, with a primary business address of 2811 Corporate Way, Miramar, FL 33025.

8.    United Tranzactions' Registered Agent is **Adam J. Katz, Esq., 2811 Corporate Way, Miramar, FL 33025**.

9.    United Tranzactions operates a "check guarantee" business whereby its merchant-clients accept a check from a consumer after United Tranzactions "authorizes" the transaction.  Should the check not clear, United Tranzactions pays the merchant the face value of the check in exchange for the transfer of the debt to United Tranzactions. In such event, United Tranzactions, as the successor-in-interest of the debt, collects the debt, plus a service charge and / or collection fee, from the consumer.

10.    United Tranzactions is licensed as a *Consumer Collection Agency* ("**CCA**") with the Florida Office of Financial Regulation, holding license number **CCA9901728**. **SEE PLAINTIFF'S EXHIBIT A.**

11.    As a licensed CCA, United Tranzactions knows, or should know, the requirements of the FCRA and FCCPA.

## Halpern

12.    **Halpern** is the CEO of United Tranzactions and is responsible for the implementation of its policies and procedures regarding the collection of debts.

13.    Halpern is believed to reside at **1711 N Ft Lauderdale Beach Blvd., Ft Lauderdale, FL 33305**.

### Katz

14.     Katz is a professional association with a primary address of **5571 N. University Drive, Suite 204, Coral Springs, FL 33067.**

### Experian

15.     Experian is an Ohio corporation, with a primary business address of 475 Anton Blvd., Costa Mesa CA 92626.

16.     Experian is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

17.     Experian is a nationwide Credit Reporting Agency ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

### Katz, Halpern and United Tranzactions are Debt Collectors

18.     Katz, Halpern and United Tranzactions are *Debt Collectors* within the meaning of the FCCPA, Section 559.55(7), Florida Statutes, in that they use postal

mail or another instrumentality of commerce, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

19.    In or around April 2017, Mr. Welfare agreed to purchase an automobile from Brandon Honda, a dealership located in Brandon, Florida.

20.    Brandon Honda's sales representative stated that Mr. Welfare needed to provide a cash down payment to qualify for a loan to finance the vehicle.

21.    Mr. Welfare explained to Brandon Honda that, at that time, he did not have sufficient funds in his checking account for the down payment.

22.    Brandon Honda's representative told Mr. Welfare that it would accept his post-dated check, subject to Brandon Honda being able to obtain a guarantee on the check from United Tranzactions.

23.    Mr. Welfare wrote such check and Brandon Honda obtained a guarantee from United Tranzactions.

24.    At this point, Brandon Honda knew it would be paid the face value of the check, even if they deposited the check and it did not clear.

25.     Instead of holding the check, Brandon Honda deposited the check prior to the agreed-upon, deferred presentment date, and despite knowing that funds were not available.

26.     The check was not paid by Mr. Welfare's bank.

27.     Due to its guarantee, United Tranzactions paid Brandon Honda the face value of the check and obtained the right to collect that amount from Mr. Welfare ("**the Debt**").

28.     The Debt arose from the purchase of goods which were primarily for family, personal, or household purposes, specifically the down payment for Mr. Welfare' personal vehicle, and therefore meets the definition of *debt* under the FCCPA, Section 559.55(6), Florida Statutes.

29.     Through at least June 2019, United Tranzactions, in an effort to collect the Debt, began placing collection calls to Mr. Welfare's cell phone.

30.     During these calls, United Tranzactions' agents threatened Mr. Welfare with arrest, criminal prosecution, and jail time.

31.     United Tranzactions' agents claimed, alternately, to "work for" a State's Attorney, which some United Tranzactions agents referred to as a "district attorney."

32.     In one instance, a United Tranzactions agent claimed that United Tranzactions "worked for" the "district attorney" and could easily cause criminal charges to be filed against Mr. Welfare.

33.     United Tranzactions' agents also claimed that Mr. Welfare's wages could be garnished despite it not having a judgment or a writ of garnishment.

34.     United Tranzactions never obtained a judgment against Mr. Welfare and could not legally seek a writ of garnishment against his wages.

35.     United Tranzactions also has no legal ability to prosecute Mr. Welfare criminally for the alleged bounced check.

36.     United Tranzactions' agents also claimed to be from the "Legal Department of United Tranzactions."

37.     However, United Tranzactions is not a law firm and, on information and belief, does not employ any licensed attorneys.

38.     United Tranzactions' representation that its calls were from a "Legal Department" caused Mr. Welfare to believe that an attorney was involved in collection of the Debt and that legal action against him was imminent should he not pay the alleged Debt.

39.     United Tranzactions was engaged in threats and extortion as defined by Section 836.05 Florida Statutes, as its agents repeatedly and maliciously

threatened to accuse Mr. Welfare of a crime – intentionally passing a bad check – when United Tranzactions knew he had committed no crime.

40.    Moreover, United Tranzactions had no intention of even attempting to refer the matter for criminal prosecution, nor did it have any legal standing to do so.

41.    United Tranzactions' threats were for one purpose only: to extort Mr. Welfare into paying a purported debt by threatening to accuse him of passing a bad check – a felony.

42.    Indeed, Mr. Welfare made payments to United Tranzactions totaling $2,920 based upon these false threats, which he believed to be real.

43.    During many calls, United Tranzactions' agents failed to make meaningful identification of themselves, stating only that the call was from "the offices of UTA."

44.    "UTA" is not a well-known acronym commonly associated with United Tranzactions and fails to identify the caller.

45.    United Tranzactions has a long and checkered history of engaging in conduct like that alleged herein.

46.    Indeed, United Tranzactions frequently makes wildly false claims and threats, such as the ability to repossess a consumer's personal car or refer

unpaid debts to a "State's Attorney" for criminal prosecution, in connection with the collection of consumer debts.

47.    United Tranzactions has been sued dozens of times for violations of state and federal consumer protection statutes.

48.    The majority of these lawsuits have a common theme: United Tranzactions harasses a consumer about a returned check, claims it is a law firm and works with a District Attorney to criminally prosecute consumers who rebuff United Tranzactions' demand for payment, informs the consumer's employer the consumer has supposedly written a bad check, and fails to identify themselves as a debt collector. *See, e.g.*, *Julian T. Lewis et. al vs. United Tranzactions, LLC*, case 1:19-cv-01564-TWP-MJD, S.D. Ind., April 18, 2019.

49.    United Tranzactions is thus well aware of the impropriety of its collection tactics but continues to utilize the same false threats of prosecution and repossession.

50.    Beyond this, many of the checks United Tranzactions collects on were written to merchants *who were told by the consumer* that sufficient funds were not available in the account at the time the check was tendered, with the merchant agreeing to hold the check for a period of time – such as the instant matter.

51.    The Florida Attorney General's website specifically states that such agreements void any criminal liability on the part of the consumer.   *See*

http://myfloridalegal.com/pages.nsf/main/cc3baba4cfbc180685256cc9006a0911

!OpenDocument

52.    However, United Tranzactions capitalizes on the fact that many consumers, particularly unsophisticated consumers, believe that *any* check which does not clear is immediately criminally prosecutable, irrespective of the circumstances under which it was written and the fact that a third-party successor-in-interest now owns the debt.

53.    Halpern, in his capacity as CEO of United Tranzactions, is responsible for implementing the aforementioned collection policies utilized by United Tranzactions' agents, such as the use of false threats of wage garnishment, repossession, and criminal prosecution, and, at all times applicable hereto, had control over these policies.

54.    Halpern is thus jointly and severally liable for the actions of United Tranzactions' collection agents taken pursuant to the policies he put in place and had authority to control. *See Fed. Trade Comm'n v. Primary Grp., Inc.,* No. 16-13532, at *3 n.2 (11th Cir. Sep. 29, 2017).

55.    On information and belief, Halpern was also *personally involved* in the collection of the Debt.

56.    At some point in time, the Debt was assigned to Katz for collection, or Katz was otherwise retained by United Tranzactions to collect the Debt.

57.    At various points in time, including within the last 24 months prior to the filing of this lawsuit, employees or agents of Katz called Mr. Welfare and threatened him with civil and criminal action if he did not make immediate payment on the purported Debt.

58.    Katz thus was engaged in threats and extortion as defined by 836.05 Florida Statutes.

59.    Adam Katz operates his law firm from offices at 5571 N University Drive, Suite 204, Coral Springs, FL.

60.    Katz's spouse, Jill Stanzione Katz, also known as Jill Stanzione, is the registered owner of several debt collection agencies operating at 5571 N University Drive, Suite 203, Coral Springs, FL, including National Management Recovery Corp. and Receivables Management, LLC.

61.    Consumers have filed dozens of complaints with consumer advocacy groups like the Better Business Bureau alleging National Management Recovery Corp. and Receivables Management, LLC threatened to "freeze" bank accounts, sue consumers for debts far outside the applicable statute of limitations, disclose debt to employers, have consumers arrested for non-payment of debts, and such.

62.    A considerable number of lawsuits alleging the same behavior have been filed against NMRC and Receivables Management, LLC, some naming Katz as a co-defendant as well.

63.     Katz is legal counsel for NMRC and Receivables Management, LLC.

64.     Katz sometimes serves as legal counsel for United Tranzactions and is frequently involved in the collection of debts on behalf of United Tranzactions.

65.     United Tranzactions obtains a great number of bad debts from its check guarantee business; those consumers who do not respond to United Tranzactions' threats of arrest are sent to Katz.

66.     Indeed, United Tranzactions and Katz have an ongoing business relationship which constitutes an "Enterprise" for the purposes of the CRCPA.

67.     United Tranzactions often sells its charged-off receivables to NMRC and Jill Katz, who then collude with Katz to collect the debts through even more Draconian measures.

68.     On May 25, 2019, Katz, in connection with the collection of the Debt, without Mr. Welfare's knowledge or consent, obtained a ***Credit Bureau Report*** ("**CBR**" or "**Report**") regarding Mr. Welfare from Experian Information Solutions, Inc. ("**Experian**"), a nationwide ***Consumer Credit Reporting Agency*** ("**CRA**").

69.     Katz's request was recorded by Experian. **SEE PLAINTIFF'S EXHIBIT B.**

70.     Katz stated the permissible purpose it had to obtain the report was concerning "child support." ***Id.***

71.   Because Katz claimed that the permissible purpose to obtain the report stemmed from a "child support" matter, Experian classified the inquiry as a "hard" inquiry, *i.e.*, one which adversely affects the consumer's credit score and is included in reports sold to other lenders.

72.   Katz clearly and obviously made a false certification to Experian to obtain the report, since Katz never represented Mr. Welfare, nor any woman claiming Mr. Welfare was the father of her child, and would not have any need for a CBR for child support.

73.   The FCRA at 15 U.S.C. § 1681b(f) prohibits any person from using or obtaining a CBR without disclosing the purpose of the request *and* the stated purpose must be authorized by the FCRA.

74.   Even assuming, *arguendo*, that Katz represented a party in a child support dispute with Mr. Welfare, the FCRA at 15 U.S.C. §1681b(4) restricts obtaining credit reports concerning child support to "the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency)," a definition which excludes Katz.

75.   Because of Katz's false certification to Experian, Mr. Welfare's credit report and scores were unfairly damaged, and dozens of prospective creditors received credit reports from Experian concerning Mr. Welfare in which it

appeared an attorney-at-law had pulled Mr. Welfare's credit concerning a child support enforcement action.

76.    Experian's reports typically include phone numbers, detailed address history, employment information, credit card balances and account numbers, mortgage or rental history, and other highly personal, sensitive information.

77.    Pursuant to the FCRA, 15 U.S.C. § 1681e(a), a CRA is required to make a reasonable effort to verify the identity of a new prospective user and verify that such user has a legitimate business need for the information.

78.    A CRA must also require that those to whom it provides reports certify: (a) the permissible purpose(s) for which they request the information; and, (b) that the information will be used for no other purpose.  See 15 U.S.C. § 1681e(a).

79.    Experian failed to reasonably verify the purposes for which Katz would be seeking information and that it would only be used for such purposes.

80.    Experian also knew, or should have known, that Katz was not using reports for "child support" purposes, since Katz is not "the head of a State or local child support enforcement agency (or a State or local government official authorized by the head of such an agency)."  15 U.S.C. § 1681b(a)(4).

81.    Experian, as one of the largest CRAs in the world, knew, or should have known, it would be highly atypical for a private law firm to have a permissible purpose to obtain a credit report for "child support" purposes.

82.     Yet, despite clear and obvious red flags, Experian furnished Katz the report.

83.     Katz then used the information in the Experian report in connection with its campaign of harassment against Mr. Welfare.

84.     Mr. Welfare has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

**COUNT I**
**VIOLATIONS OF THE FCCPA**
**UNITED TRANZACTIONS AND HALPERN**

85.     Mr. Welfare adopts and incorporates paragraphs 1 – 84 as if fully stated herein.

86.     United Tranzactions and Halpern violated Section **559.72(9)**, Florida Statutes, when United Tranzactions, acting pursuant to policies put in place by Halpern and under his control, knowingly asserted the existence of a legal right which does not exist, specifically: (1) that United Tranzactions could cause criminal charges to be brought against Mr. Welfare for a civil matter when United Tranzactions is not a state prosecutor; and, (2) that United Tranzactions could levy Mr. Welfare's wages without court judgment and writ of garnishment.

87.     United Tranzactions and Halpern violated Section **559.72(10)**, Florida Statutes, when United Tranzactions agents, acting on behalf of United Tranzactions and pursuant to policies put in place by Halpern, communicated in

a manner which implied United Tranzactions' actions were approved by a government agency – a state and/or district attorney – and an attorney at law, when the communication was not.

88.    United Tranzactions and Halpern violated Section **559.72(12)**, Florida Statutes, when United Tranzactions agents, acting on behalf of United Tranzactions and pursuant to policies put in place by Halpern, orally implied they were attorneys, or were affiliated with a law office, when they were lay debt collectors not working under the direct supervision of any attorney-at-law.

89.    United Tranzactions and Halpern violated Section **559.72(15)**, Florida Statutes, when United Tranzactions agents, acting on behalf of United Tranzactions and pursuant to policies put in place by Halpern, refused to provide adequate identification of themselves in phone calls, referring only to themselves as "UTA," an acronym not well-known to the general public and not the real name of United Tranzactions.

**WHEREFORE,** Mr. Welfare respectfully requests that this Honorable Court enter judgment against Halpern and United Tranzactions, jointly and severally, for:

a.    Statutory damages of $**1,000.00** per defendant (for a total of **$2,000.00**) pursuant to Section 559.77(2), Florida Statutes;

b.    Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.     Injunctive relief, prohibiting Halpern and United Tranzactions from attempting to collect the debt using any means not allowed by Florida statute;

e.     Reasonable costs and attorneys' fees pursuant to section 559.77(2), Florida Statutes; and,

f.     Such other relief that this Court deems just and proper.

### COUNT II
### VIOLATIONS OF THE FCCPA – KATZ

90.     Mr. Welfare adopts and incorporates paragraphs 1 – 84 as if fully stated herein.

91.     Katz violated Section **559.72(9)**, Florida Statutes when it knowingly asserted the existence of a legal right which does not exist, specifically: (1) that Katz, on behalf of United Tranzactions, could cause criminal charges to be brought against Mr. Welfare for a civil matter when neither Katz nor United Tranzactions is a state prosecutor; and, (2) that Katz, on behalf of United Tranzactions, could levy Mr. Welfare's wages without court judgment and writ of garnishment.

92.     Katz violated Section **559.72(9)**, Florida Statutes, when it, as agent or attorney for United Tranzactions and Halpern, knowingly asserted the existence of a legal right which does not exist, specifically the right to obtain a CBR from Experian under false pretenses, *e.g.* that Katz needed the report for "child support" purposes, when such false certifications are prohibited by the FCRA.

93.     Katz's collection calls were separate and distinct from those placed directly by United Tranzactions to Mr. Welfare.

**WHEREFORE,** Mr. Welfare respectfully requests that this Honorable Court enter judgment against Katz, for:

a.      Statutory damages of $**1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief, prohibiting Katz from attempting to collect the debt using any means not allowed by Florida statute;

e.      Reasonable costs and attorneys' fees pursuant to section 559.77(2), Florida Statutes; and,

f.      Such other relief that this Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FCRA – KATZ

94.     Mr. Welfare adopts and incorporates paragraphs 1 – 84 as if fully stated herein.

95.     Katz violated **15 U.S.C. § 1681b(f)**, which prohibits obtaining a consumer report for any purpose unless it is obtained for a purpose for which the report is authorized and the purpose has been certified by the prospective user, when it, either willfully and intentionally or recklessly and without regard for a consumer's rights, requested a credit report regarding Mr. Welfare, falsely

claiming that it needed the report concerning "child support," when Katz was instead obtaining information for the purpose of intimidating Mr. Welfare into paying a purported debt.

96.    Katz's actions and omissions were willful and intentional, as it knew, or reasonably should have known, it was not involved in any kind of child support controversy involving Mr. Welfare and, moreover, it was abundantly aware it was not the head of a state or local child support enforcement agency.

97.    Katz's actions exhibited a reckless disregard for the rights of a consumer.

98.    Katz is liable for the above-stated violations of the FCRA, and Mr. Welfare is thereby entitled to an award of statutory damages not to exceed $1,000 *for each violation*.

**WHEREFORE,** Mr. Welfare respectfully requests this Honorable Court to enter judgment against Katz for:

a.    The greater of statutory damages of **$1,000.00** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Welfare's actual damages;

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FCRA – EXPERIAN

99.    Mr. Welfare adopts and incorporates paragraphs 1 – 84 as if fully stated herein.

100.    Experian violated **15 U.S.C. §1681e(a)** when it failed to "make a reasonable effort to verify the identity of a new, prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report" by accepting, without challenge or independent verification, that Katz was intending to obtain and use credit reports for purposes involving child support, despite the fact that Katz clearly was not a head of a state or local child support enforcement agency.

101.    Experian violated **15 U.S.C. § 1681b(a)** when it provided a report to Katz while having no reason to believe that Katz had a legitimate business need for the report or intended to use it in connection with any kind of child support enforcement matter.

102.    Experian's conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

103.    As a result of its conduct, Experian is liable to Mr. Welfare pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Welfare respectfully requests this Honorable Court to enter judgment against Experian for:

a.   The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Welfare's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.   Punitive damages for intentional violation of the Act pursuant to 15 U.S.C. §1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.   Such other relief that this Court deems just and proper

### COUNT V
### JOINT & SEVERAL VIOLATIONS OF THE CRCPA – KATZ, UNITED TRANZACTIONS, & HALPERN

104.   Mr. Welfare incorporates paragraphs 1 – 84 as if fully stated herein.

105.   **United Tranzactions and Halpern** violated **Sections 772.103(1) and 772.103(2), Florida Statutes**, when they received proceeds – at least $2,920 – derived from a pattern of criminal activity, specifically, by extorting Mr. Welfare and threatening to accuse him of criminal acts and cause him to be arrested, when United Tranzactions and Halpern knew such accusations would be false. United Tranzactions and Halpern utilized the proceeds of these payments from Mr.

Welfare to maintain their interests in an ongoing enterprise with Katz. United Tranzactions and Halpern knew extorting money by making threats to accuse consumers like Mr. Welfare of crimes was unlawful.

106.   **Halpern and Katz** violated **Section 772.103(3), Florida Statutes**, in that they knowingly participated in, and were employed by and/or associated with, an enterprise engaged in an ongoing pattern of criminal activity – extortion of consumers like Mr. Welfare. Over a decade of lawsuits and complaints make clear that United Tranzactions collects debt by extorting consumers, such as Mr. Welfare, claiming United Tranzactions will accuse them of criminal acts if debts are not paid. Despite this, United Tranzactions' collection agents, including Katz, continue to threaten criminal action in connection with the collection of accounts.

107.   **United Tranzactions, Katz and Halpern** violated **Section 772.103(4), Florida Statutes**, when they knowingly conspired with each other and other individuals and companies and endeavored to violate subsections (1) and (3) of the CRCPA by attempting to, and actually obtaining, proceeds through extortion of consumers by threatening to accuse them of crimes in the event they did not pay particular debts, including Mr. Welfare's alleged debt originating with Brandon Honda.

108.   The business model of United Tranzactions, Katz and Halpern readily acknowledges that United Tranzactions would be economically unviable without

extortion, and goes to great lengths to obfuscate who is collecting the purported debts, and attempts to deceive consumers into believing that they have no legal recourse against the enforcement of such debts.

**WHEREFORE,** Mr. Welfare respectfully requests this Court enter judgment against United Tranzactions, Katz and Halpern, jointly and severally, for:

a.    Treble actual damages of at least **$2,920** (for a total of **$7,760**), or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Section 772.104(1), Florida Statutes;

b.    Reasonable costs and attorneys' fees pursuant to Section 772.104(1), Florida Statutes;

c.    An injunction of Estoppel against Tranzactions, Katz and Halpern from engaging in any further action in violation of Florida law, pursuant to Section 772.14, Florida Statutes; and,

d.    Any other relief this Court deems equitable and proper under the circumstances.

## <u>JURY TRIAL DEMAND</u>

Mr. Welfare hereby demands a jury trial on all issues so triable.

Respectfully submitted on May 10, 2021, by:

**SERAPH LEGAL, P. A.**

<u>/s/ *Bryan J. Geiger*    </u>
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
BGeiger@SeraphLegal.com
1614 N. 19th St.
Tampa, FL 33605
Phone: (813) 567-1230
Fax: (855) 500-0705
*Attorneys for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>
A        United Tranzactions' Florida CCA

# Verification of Complaint and Certification

Pursuant to 28 U.S.C. § 1746, Plaintiff Ryan Welfare verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____5/6/2021_____ (date)

DocuSigned by:

_____
EBEF9EEFETA443Z...
Ryan Welfare